Margaret WERNLI, Appellee,

v.

Louis Samuel WERNLI, Jr., Appellant.

No. 56202.

Supreme Court of Iowa.

March 27, 1974.

Stewart, Hatfield, Klass & Whicher, Sioux City, for appellant.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, and Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and UHLENHOPP, JJ.

LeGRAND, Justice.

This appeal had its genesis in a decree of divorce entered in 1954. Since then there has been one modification. There have also been several unsuccessful applications asking further changes. On April 30, 1972, defendant again requested an adjustment of the terms of the 1954 decree. It is from the order on this application, partially granted and partially denied, that this appeal is taken.

The trial court refused to release funds now held by the clerk of the Woodbury district court to assure payment of $50,-000.00 to plaintiff if she survives defendant without having remarried; reduced alimony payments from $300.00 per month to $200.00 per month; and directed release to plaintiff by periodic payments in the form of alimony of the funds held by the clerk in excess of $50,000.00. We affirm the trial court with one slight change simply to update the matter of alimony payments.

Our review is de novo. We consider anew the various reasons urged for reversal on the record made in the trial court. Before doing so, we believe it would be helpful to briefly relate the facts furnishing the backdrop for the present controversy.

I. At the time of the divorce, the parties were financially secure. Defendant was a substantial stockholder in a prosperous family business for which he worked at a comfortable salary. They lived well. The original decree adopted the stipulation of the parties as to matters of child custody, alimony, support, and division of property. The matters of custody and child support have long since become unimportant because the two children affected by the decree are now adults.

However, vexatious questions concerning alimony have persisted over the years, principally because both plaintiff and defendant have fallen upon evil days. Advancing years and ill health have overtaken them. Defendant is unemployable, and plaintiff's income is insufficient to maintain her. Both now live in austerity compared to the relative affluence they enjoyed in better times.

In the meantime certificates of deposit in the amount of $60,000.00 remain on deposit with the clerk of court as a prize for the one who survives. This sizeable fortune is the subject of the present controversy.

This fund was created by the following stipulation which was incorporated into the 1954 decree:

"It is further stipulated and agreed by and between the parties hereto that in the event the defendant should die prior to the death or remarriage of the plaintiff that the defendant's estate and personal representative shall be obligated to pay to the plaintiff the further sum of $50,000.00, payment of which is and shall be secured by the [following] pledge of stock * * *.

"[D]efendant will pledge to plaintiff 400 shares of stock of defendant in the Hansen Glass & Paint Company as security to plaintiff for the full and complete performance by defendant, and by defendant's estate and personal representative, of this agreement and the provisions of the decree of divorce in this cause, the defendant to retain the full voting power of said stock and the right, in good faith, to sell the same, the lien however to attach to the proceeds of said sale and in the event to reinvest that money in such property or securities as the plaintiff and defendant may agree upon, and in the event of their failure to agree, then such property or securities as may be approved by the court, plaintiff to have a like lien on said new securities as provided for herein."

While we do not overlook the possibility of plaintiff's remarriage, that contingency is unimportant to our discussion and we disregard it in our consideration of the case.

In 1971 defendant sold the 400 shares of pledged stock·for $60,000.00, which was then deposited with the clerk of court in lieu of the stock. By agreement the funds were invested in certificates of deposit with designated banks. The income became the property of defendant, and it has been regularly paid to him. It amounts to approximately $3,600.00 per year.

Now defendant covets the fund itself. He says a material change in circumstances entitles him to a modification of the decree eliminating the lump-sum payment to plaintiff at his death. He asks that the money be released to him.

There is something appealing about defendant's argument. It seems ironic that plaintiff and he should both live in straitened circumstances while this money remains frozen ghoulishly awaiting fate's decision. However, we immediately come face to face with the decisive question: Is this fund alimony or part of the property settlement?

■ We see no escape from the trial court's conclusion that it was a vital part of the property settlement reached by the parties in 1954. As such it is not subject to modification.

This case is controlled by Knipfer v. Knipfer, 259 Iowa 347, 355, 356, 144 N.W. 2d 140, 145 (1966) and Danley v. Danley, 163 N.W.2d 71, 74 (Iowa 1968). As pointed out in *Knipfer*, the question of determining whether a provision for payment of money is alimony or property settlement is fraught with difficulty. In the present case, we believe the provision for payment of $50,000.00 to plaintiff if defendant should predecease her must be held part of the property settlement awarded to plaintiff in lieu of any dower interest which would have accrued to her if the marriage had survived. There is no reasonable interpretation which would allow us to say that this was an award of alimony. See also discussion in Kraft v. Kraft, 193 Iowa 602, 607, 187 N.W. 449, 451 (1922) and Barish v. Barish, 190 Iowa 493, 501, 180 N.W. 724, 728 (1920) (concurring opinion.)

We therefore agree with the trial court that the grant of $50,000.00 to plaintiff if she survives defendant is not subject to modification.

II. Several other matters must be resolved. One involves the reduction of alimony from $300.00 per month to $200.00. (Although plaintiff filed notice of cross-appeal, she does not press the matter here and has apparently abandoned it.)

■ The reduction was made effective as of September 1, 1972, several months after the modification decree was filed. Defendant insists he is entitled to the benefit of this reduction as of July 1, 1972—two months earlier. We are not disposed to dispute the trial court's holding as to the date the reduced alimony payments were to start.

III. One other matter remains. It concerns the property held by the clerk to guarantee payment of the sum due plaintiff upon defendant's prior death. Since the pledge of stock with a fluctuating value has been replaced by certificates of deposit there is no reason to maintain security in excess of the maximum amount which plaintiff can claim. Defendant should not be obliged to pledge $60,000.00 in cash equivalent to secure payment of a $50,000.00 debt.

This is what the trial court held, and we agree. Defendant protests, however, because the trial court did not direct the release of the excess $10,000.00 to him but ordered it paid to plaintiff at the rate of $600.00 each six months to discharge part of defendant's alimony obligation of $200.-00 a month.

Defendant argues there is no authority for this "judicial paternalism." We believe defendant overlooks the import of the original decree. It required the pledge of stock—and now its proceeds—not only to assure payment of the death benefit of $50,000.00 but also to guarantee performance of *all* the provisions of the decree.

This, of course, relates to alimony as well as to the property settlement.

■ As already noted, the trial court modified the decree by reducing monthly alimony payments from $300.00 to $200.00. In relation thereto it could lay down conditions under which any portion of the pledged property held to assure alimony payments should be released. The order directing periodic payments to plaintiff from the fund relieves defendant of the burden of paying the total amount due from his own meager funds and at the same time assures plaintiff her alimony will be paid. We believe the order is not only proper but is also fair to both.

This provision was to become effective January 1, 1973. We do not know what payments have been made, nor from what funds, during the pendency of this appeal. Under the modification order there has accrued to plaintiff from the pledged money $600.00 on January 1, 1973, on July 1, 1973, and on January 1, 1974.

If defendant has paid the alimony from his other funds during the pendency of this appeal, he shall be entitled to reimbursement to the extent of the payments which would otherwise have been made from the funds in possession of the clerk of court under the modification order of June 13, 1972. Upon proper showing, the trial court shall make an appropriate order to carry out this provision.

IV. In summary, we hold as follows:

1. The trial court's finding that the provision for payment of $50,000.00 to plaintiff if she has not remarried and survives defendant is part of a property settlement not subject to modification is affirmed.

2. The reduction of alimony payments from $300.00 per month to $200.00 per month effective September 1, 1972, is affirmed.

3. The order directing that $10,000.00 of the certificate of deposit now held by

the clerk of court be released to plaintiff at the rate of $600.00 each January 1 and July 1, beginning January 1, 1973, to partially discharge defendant's alimony obligation is affirmed on the condition set out in Division III hereof.

The judgment of the trial court is affirmed.

Affirmed.